FREDERICK S. AYRES ET AL. v. LANGDON HUBBARD.

[See 57 Mich. 322.]

*Principal and agent—Statements of agent—Evidence—Trover—Damages—Pleading—Statute of limitations—Burden of proof.*

1. Where the acts of an agent bind the principal, his declarations and admissions, respecting the same subject-matter, made at the same time, and constituting a part of the *res gestæ*, are also binding.

    So *held*, in a suit to recover the value of timber cut by defendant's contractor on land not belonging to the defendant, who received the proceeds of the trespass, which was casual and involuntary.

2. Where, in a suit to recover for timber cut from plaintiff's land by defendant's contractor, the defendant denies the trespass, and gives notice of the statute of limitations, testimony of a third party showing a settlement by defendant with him for a trespass committed on his land at the same time as the one charged by plaintiffs, and by the same contractor, which cutting extended onto plaintiff's land, is admissible as tending to establish plaintiff's claim, and as showing that it was not barred by the statute of limitations.

3. Under a plea of the statute of limitations the burden is upon the plaintiff to show the commencement of suit within the statutory period.

4. Where, in trover to recover the value of logs cut from plaintiff's

lands, it appears that the trespass was neither willful nor negligent, the measure of damages is the value of the timber on the land.[1] *Ayres v. Hubbard,* 57 Mich. 322.

Error to Huron. (Beach, J.) Argued May 3, 1888. Decided October 19, 1888.

Trover. Plaintiffs bring error. Reversed. The facts are stated in the opinion.

*James H. Hall (Isaac Marston,* of counsel), for appellants, contended:

1. If an act may be proved, statements accompanying it may also be proved; citing Stephen, Ev. Art. 8; 1 Greenl. Ev. § 113.
2. If Montgomery was a willful trespasser, and his acts were binding on defendant, the measure of damages is the value of the timber at the mill; citing *Final v. Backus,* 18 Mich. 218; *Grant v. Smith,* 26 Id. 201; and if defendant is liable in consequence of the receipt and subsequent use of the timber, he is liable for the value in the stream; citing *Ripley v. Davis,* 15 Mich. 75; and his ignorance of the trespass cannot protect him; citing *Tuttle v. White,* 46 Mich. 485; nor the fact that the trespass was unintentional; citing *Mining Co. v. Hertin,* 37 Mich. 332.
3. When a defense is grounded on a negative allegation, it must be proved by the party alleging it; citing 1 Greenl. Ev. §§ 78, 81, which doctrine counsel applies to the plea of the statute of limitations; citing 1 Arch. *Nisi Prius,* 611; *Philpot v. Kelley,* 3 Adolp. & Ellis, 106; and especially Patteson and Coleridge, JJ., 114, 117; and the question seems settled in this State by *White v. Campbell,* 25 Mich. 463, 471, 475.

*Winsor & Snover,* for defendant, cited no authorities upon the points decided, excepting the former decision in this case as to the measure of damages.

Long, J. This cause has once been heard in this Court, and is reported in 57 Mich. 322 (23 N. W. Rep. 829). On that trial plaintiffs prevailed, and the defendant brought the case to this Court by writ of error, where it was reversed and a new trial ordered.

---

[1] See *Gates v. Rifle Boom Co.,* 70 Mich. 309.

The only question then involved was the proper measure of damages, and this Court then held that there was—

"Nothing in the case indicating any willful or negligent trespass on the part of the defendant or the company's employés. The general rule of damages is the value of the property lost, under such circumstances, at the time and place of conversion. * * * Each case, however, must necessarily, to a very great extent, depend upon its own peculiar circumstances and equities."

The case was again tried in the circuit court for Huron county, and the defendant prevailed. Plaintiffs bring the case to this Court by writ of error.

Plaintiffs were, during the transactions involved in this case, lumbermen and mill-owners in Huron county. The defendant was a member of the firm of R. B. Hubbard & Co. during this time, also doing a lumber business in said county.

This firm, in the month of December, 1874, let a contract to one John Montgomery to cut logs and timber during that winter on their lands in Huron county, and haul and put the same afloat in Willow creek, for the agreed price of $3.50 per thousand feet. Montgomery proceeded under his contract, and cut, hauled, and placed in the creek a large quantity of logs. It is claimed that neither the company, of which defendant was a member, nor the defendant knew that logs were taken from any other than lands of the defendant.

On August 14, 1880, this suit was brought, in trover, to recover for a quantity of timber claimed to have been cut by Montgomery from plaintiffs' lands, while he was so lumbering for R. B. Hubbard & Co., in the winter of 1874-5. The plaintiffs' lands were 80 acres on section 15, town 17 N., range 13 E. One Luther Ripley owned lands immediately adjoining plaintiffs'. Defendant owned other lands near, but not adjoining, these. These lands of

defendant were those lumbered by Montgomery in the winter of 1874–75.

The logs taken from these lands by Montgomery were put in Willow creek, and run from there to Huron City, where they were sawed. It is admitted that defendant had the avails of all these logs so put into Willow creek by Montgomery. Plaintiffs claim that among the logs put by Montgomery into Willow creek, and delivered over to defendant, was a large quantity of logs taken by Montgomery from their lands on section 15 during that winter. This action is brought to recover the value of such logs.

The declaration is in the ordinary form in trover. The plea is the general issue, with notice of the statute of limitations.

Plaintiffs claim that the action was brought as soon as the trespass and loss of timber was discovered.

Defendant denies the taking of any timber from plaintiffs' lands; alleges that Montgomery never had any direction to cut from any but defendant's land, and if he did so cut it was wholly unknown to defendant. Defendant also claims that, if any timber had been cut from plaintiffs' lands, it was some time prior to the winter of 1874–75; that these timbers were cut by one Thompson, who was lumbering along-side of these lands in the winter of 1868–69.

It was claimed on the trial by the plaintiffs that, while so lumbering for defendant, Montgomery also trespassed on Ripley's lands as well as on plaintiffs', and cut and delivered to the defendant a quantity of timber therefrom, and that for this trespass on Ripley's land defendant afterwards settled with Ripley; that part of Ripley's land cut over was contiguous to plaintiffs'; and that plaintiffs afterwards discovered that a quantity of their timber had been cut just over the line between their lands and Ripley's.

Ripley was called as a witness for plaintiffs, and testified that in the fall of 1874 he was on his land, and no timber had been cut, nor, so far as he observed, on the plaintiffs' land, though he was not at that time on plaintiffs' land; that in 1875, going there again, he found timber cut. Plaintiffs then offered to show by Ripley that in the winter of 1874–75 he found Montgomery on this land, and that Montgomery then told him he had cut and delivered to defendant timber from Ripley's and what turned out to be plaintiffs' land. This was excluded by the court, and upon this ruling plaintiffs assign error.

Ripley testified further that, upon this statement from Montgomery, he went and saw defendant, and demanded pay for the timber taken, supposing at that time it had all been taken from his land. Defendant accordingly sent a Mr. McFadden, a surveyor, to examine the trespass with Ripley. In this examination they found that part of the timber had been cut from plaintiffs' land; that they estimated the timber cut from Ripley's land, and that defendant afterwards paid him for it.

McFadden was also called on the same question, and gave testimony; but on motion of counsel for defendant the court struck out all the testimony relative to the cutting on Ripley's land, and the settlement therefor.

At the time this statement was made by Montgomery he was in the employ of defendant, lumbering on his land, and defendant had all the timber taken, whether it came from his own or Ripley's or plaintiffs' lands. Plaintiffs had shown by the witness that he found in the year 1875 certain timber cut on his own and plaintiffs' lands; that Montgomery was lumbering there on defendant's land, near by, for defendant; and that he then and there stated he had cut this timber, and delivered it with other timber to defendant in Willow creek. Acting upon this information, Ripley called upon defendant, informed him

of the facts, and defendant settled for the trespass on the lands of Ripley.

We think this testimony was competent. The acts of the agent, Montgomery, in taking this timber, were binding upon the defendant, who had the fruits of his agent's trespass, and where the acts of the agent will bind the principal, then his representations, declarations, and admissions, respecting the subject-matter, will also bind him if made at the same time, and constituting a part of the *res gestæ*. These declarations are in the nature of original evidence, and not hearsay. 1 Greenl. Ev. § 113.

The transaction between Ripley and defendant in the settlement of trespasses on Ripley's land was also competent, when taken in connection with Ripley's testimony, that a part of the timber taken at that time was from plaintiffs' land. It had a tendency to show that the trespass was committed on plaintiffs' land as well as on Ripley's, by Montgomery, while acting as the agent of defendant, and that the same was taken within the six years next preceding the commencement of this suit. It was error to exclude this testimony.

The court charged the jury that—

"The burden of proof is on the plaintiffs in this case to show by a preponderance of evidence the time when the timber was taken; that is, within the six years, and the quantity taken, if any, within that time."

Exception is taken by plaintiffs' counsel to this part of the charge. It is claimed by plaintiffs' counsel that, the defendant having pleaded the statute of limitations, the burden would be upon him to prove his own allegations, and this, too, though it is negative in form. The rule, however, is well settled that, under a plea of the statute of limitations, the burden is on the plaintiffs to show the commencement of action within the statutory period. 2 Greenl. Ev. § 431.

We see no reason, under the circumstances stated in this record, for reconsidering the question as to the measure of damages. The facts appear as they appeared in the former record, that neither the defendant, the company of which he was a member, nor Montgomery intended any trespass, and if the plaintiffs were entitled to recover, the measure of their damages would be the value of the timber on the land.

For the errors pointed out the judgment of the court below must be reversed, with costs, and a new trial ordered

SHERWOOD, C. J., CHAMPLIN and MORSE, JJ., concurred. CAMPBELL, J., did not sit.