## OFFLEY *v.* GARLINGER.

1. STATUTES OF LIMITATION — ADVERSE USER — DRAINAGE — PRE-
SCRIPTION—BURDEN OF PROOF.

　A defendant in a proceeding in equity to enjoin an increase
　over the natural flow of surface water from defendant's to
　complainant's property, has the burden of showing that he
　has acquired the right by prescription.

2. WATERS AND WATERCOURSES—FLOWING LANDS—DRAINS.

　While the natural flow in times of high water was from de-
　fendant's to complainant's land from a swamp in one corner
　of defendant's property, the complainant is under no obliga-
　tion to submit to a discharge of surplus water artificially
　brought from portions of defendant's land to a dividing high-
　way, thence into the swamp and upon complainant's land:
　and no additional right accrues to the defendant from the
　construction of the highway, under which a culvert is built
　from the swamp to the land of complainant. *Smith* v. *Bar-
　rett*, 159 Mich. 325 (123 N. W. 1091) distinguished.

3. SAME—ESTOPPEL—LACHES.

　The doctrine of laches or of estoppel is not available to defeat
　the claim of the lower proprietor on any theory that his pur-
　chase of the land with knowledge that the defendant was
　committing a trespass subjects it to the continuation thereof.

Appeal from Barry; Parkinson, J., presiding. Sub-
mitted April 11, 1910. (Docket No. 53.) Decided May
7, 1910.

Bill by Hibbard A. Offley against Peter Garlinger to
restrain the draining of surface water upon complainant's
land. From a decree for complainant, defendant appeals.
Affirmed.

*Thomas Sullivan*, for complainant.

*Colgrove & Potter*, for defendant.

OSTRANDER, J.　The complainant owns the N. E. ¼ of

section 22 in the township of Castleton, in Barry county. The defendant owns the E. ½ of the S. E. ¼ of section 15 and the W. ½ of the S. W. ¼ of section 14 in the same township. There is a highway on the section line between sections 15 and 22, and 14 and 23. It is intersected, at the contiguous corners of these four sections, by a highway running north and south. From this statement it will appear that defendant's west 80 acres is directly north of complainant's east 80 acres, and that they are separated by a highway. The natural flow of surface water is to the south and southwest. The land on section 15 is higher generally than the land on section 22. At the point at which these highways intersect each other, but lying west of the north and south highway, is a swamp, the larger part of which is on section 15, but some of which is on section 22. There is a conduit or culvert in the highway. Defendant, by the use of tile laid in the south part of his west 80 acres, has drained some of the land into this swamp, and has drained some of it, farther west, into the highway, from which the water passes to complainant's land. In the southwesterly part of defendant's east 80 he has laid tile for the purpose of draining his land, or portions of it. The consequence is that water passes through his tile from both his west and east 80's into this swamp, and water in excess of or more than would pass there if the land was in a state of nature. As a further consequence, this additional water passes from the north side of the highway to the south side through the culvert onto complainant's land. Complainant drains the swamp, to the south, into a ravine or watercourse hereinafter referred to. Having its rise in a swamp near the northeast corner of the east 80 acres owned by defendant, a watercourse used to run from that swamp southeasterly, thence southerly, thence generally southwesterly, to the east and west highway referred to, thence southwesterly across the N. W. ¼ of the N. W. ¼ of section 23, thence west and south to and across the land of complainant, which it reaches at a

point some rods south of the intersection of the aforesaid highways. It is into this watercourse that the defendant has drained various ponds and swamps lying to the north and east of complainant's land.

The court below granted complainant no relief with respect to waters which naturally, or which artificially, for a considerable period of time, have found their way from the easterly portion of defendant's east 80 acres into this natural watercourse, and complainant does not appeal. Relief was granted with respect to the waters collected by the tile drains constructed by defendant which are otherwise cast upon the lands of complainant. He awarded to complainant a small sum by way of damages, and the decree provides for an injunction restraining defendant from any longer maintaining those tile drains which have the effect to empty water into the highway, either into the north and south highway, or into the highway running east and west, and from collecting, by means of drains, water in the swamp aforesaid.

It is not here attempted to state with precision the particular drains affected by the injunction. For that purpose, the decree must be resorted to. Without setting out the testimony presented in a record of more than 400 pages, it is sufficient, for the purpose of this opinion, to say that it establishes beyond question or doubt that the defendant has from time to time, by tiling and ditching his lands, carried into the swamp which has been referred to as situated in the southeast corner of his west 80, and into the highways which have been referred to at other points, considerable quantities of water which would not in the same volume or in the same time be accumulated, and he has by artificial means, which have benefited his own lands, freed them from large quantities of water which otherwise would stand in low places thereon, and cast them upon the lands of the complainant with resulting injury. The applicable rules of law are not difficult to understand, and counsel do not disagree about them. It is

161 MICH.—23.

not denied by complainant that, if these lands were in their natural state, if no artificial drainage had been resorted to, that some of the surplus waters from defendant's lands would be cast upon his lands.

Aside from the contention that the complainant's action is barred, at least with respect to some of the drains, by the statute of limitations, and the contention that relief should be denied him upon the ground that he is guilty of laches in sitting by while defendant's system of drainage was in process of construction, defendant presents two principal defenses. One of them is that, as to some of the waters which flow from his lands into the highways and find their way into the swamp which has been referred to, the action of the highway commissioner, or of highway commissioners, is responsible for that water being conducted into the swamp; that the making of the road interfered with the natural flow of all those waters across the 40 acres to the east of complainant's land, and so down and into the natural watercourse which has been referred to. In this connection it is claimed that the township and the owner of the land east of complainant's land should have been made parties to this bill. The other defense, and the one which, if sustained by the proofs, would in fact be an answer to the most considerable number of complainant's claims, is that there used to be a natural watercourse which drained the swamp first referred to; that in place of that complainant has put in the tile drain already referred to as leading from the swamp to the south, and that the tile drain is inadequate to do that which in the state of nature the alleged natural watercourse did; that in consequence of the size of the tile used by complainant, compared with the quantity of water which in any event came upon his land, he has dammed and impeded the natural flow of the water, to which cause he ought to trace considerable, if not all, of the injury which he complains about.

As to the drains affected by the decree which are on defendant's east 80 acres, one empties into the east and west

highway some 15 rods east of the corners where the highways which have been referred to intersect, the other into the north and south highway north of said corners.   It is claimed they were constructed more than 15 years before the filing of the bill of complaint in this cause, which was April 9, 1906.   The contention of defendant is that complainant has not proven that his suit was begun within the statute period.   Counsel rely upon *Ayres* v. *Hubbard,* 71 Mich. 594, 599 (40 N. W. 10).   See, also, *Belden* v. *Blackman,* 134 Mich. 667 (83 N. W. 616).   The rule followed in the cases cited is that, when the statute of limitations is pleaded, the burden is upon the plaintiff to show that he began his action within the statute period.   But what is the statute period in this case ?   The theory of complainant is that he is presently injured by the conduct of defendant; that the injury is a continuing one, which may not be adequately compensated by an award of damages, although damages should be awarded, and are claimed.   If defendant asserts the right to continue the injury without making compensation, he is asserting something more than that complainant has not brought his action in due season.   He is asserting, if anything, a prescriptive right to flow lands.   This is an affirmation which he must sustain by evidence.   Suppose that complainant had begun his action at law for damages.   The defense, which we are now considering, must have been just what it is now, namely, that at some period of time defendant acquired the right to do what is complained of.   The evidence does not satisfy us that defendant has this right. The evidence preponderates in favor of the finding that the drains were constructed after April 9, 1891.   In any event, it does not appear that any water was, by means of the drains, turned upon the land now owned by complainant prior to April 9, 1891.

We fail to see how, with respect to the two drains mentioned, the action of highway officers excuses defendant. The facts are that he discharges water from his land, by means of his drains, into the highways, and that these

waters, after following the highways, come again upon his land, from which they then pass to the land of complainant. There is no evidence of any obstruction by the township authorities of any natural watercourse but for which obstruction complainant's lands would, through said watercourse, have received these waters. There is some testimony to the effect that at times of high water the waters from the swamp in question flowed southeasterly through a sluice or culvert in the highway upon the N. W. ¼ of N. W. ¼ of section 23, and were finally discharged into the natural watercourse, which has been referred to. But it does not appear that, if the highway as originally constructed, with its corduroy road through this swamp, had remained, defendant would have the right to discharge water, by his drains, first into the highway, then the swamp, and finally upon the N. W. ¼ of N. W. ¼ of section 23. We are dealing, not with a natural flow and level of water, but with a surplus of water, artificially brought to the swamp by the defendant. The swamp is partly upon the land of the defendant, partly upon the land of complainant. The surplus water is received into that part of the swamp in defendant's land. If there were no highway dividing the swamp, it would affect complainant wherever the outlet of the swamp might be. With the highway it flows, through the culvert therein, upon complainant's land. He is under no obligation to defendant to receive it or to remove it. If defendant has any right to cast the water upon other land than that owned by complainant, and the township authorities have interfered with such right, it would seem to be defendant, and not complainant, who should move in the matter. The case of *Smith* v. *Barrett*, 159 Mich. 325 (123 N. W. 1091), relied upon by defendant, is in its facts wholly unlike the case at bar, as an examination will discover. That case dealt with the removal by township authority of an artificial impediment to the natural flow of water in a natural watercourse. It was held that a lower proprietor, whose lands abutted the highway in which the watercourse lay,

had no prescriptive right, as against the public, to have the impediment maintained.

It is said that because complainant purchased the east 40 acres of the west 80 acres of his land—the 40 acres which is in fact most affected by the waters from the swamp—knowing that defendant drained portions of his land into the swamp, and as since his purchase no drains have been constructed upon defendant's east 80 acres, he is estopped to complain about the effect produced by those drains the waters from which flow into the swamp. Courts of equity have sometimes, by the application of the doctrine of laches, or of estoppel, brought about results very like those which would follow the shortening of the statute period for gaining prescriptive rights in land. We are referred to no decision in which it is held that the mere fact that one purchases land upon which an adjoining proprietor habitually trespasses involves any duty on the part of the purchaser to permit the trespasses to be repeated. Cases like *Edwards* v. *Mining Co.*, 38 Mich. 46 (31 Am. Rep. 301), are not in point here, even if it could be said that what is decided, by two of four justices of this court, is the rule of decision for similar cases. Having concluded that complainant is under no obligation to receive any of the waters brought to the swamp by the defendant, either by the two drains in the east 80 acres which have been referred to, or by the drain in the west 80 acres which leads to the swamp, we hold the injunction restraining the further bringing of water to the swamp by such means was properly granted by the court below.

Of course, complainant should not have damages for any injury to the land which was not caused by this trespass of defendant. We are not satisfied that the court below, in limiting the award of damages to $50, considered any injury for which complainant is himself wholly or in part responsible.

There is a pond in the southerly portion of defendant's west 80 acres, situated west of the center of that piece of land, and it is asserted by complainant, and we think is

proven, that defendant has managed, by use of tile and by turning furrows in his field, which furrows the water has deepened, to cast water from the pond into the land of complainant. It is asserted that only the overflow or surplus water of the pond is so carried away, and, also, that such surplus finds its way into what was once, and for the purposes of this case should be held to now be, a natural watercourse. The testimony does not satisfy us that defendant is right in either of these contentions. As to the first one, it is not disputed that defendant drains a portion of his said land into this pond; and, as this drain relieves the land from considerable quantities of water, it follows that thereby the quantity of water in the pond is so much increased, and the overflow of the pond is not the natural one.

We are of opinion that the decree below ought not to be disturbed, and it is affirmed, with costs to complainant.

HOOKER, MOORE, McALVAY, and BROOKE, JJ., concurred.